|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF PUERTO RICO | |
| MISAEL SANTIAGO-RODRÍGUEZ, et al., | |
| Plaintiffs, | Civil No. 07-1988 (JAF) |
| v. | |
| BENJAMÍN VALENTÍN-RUIZ, et al., | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiffs, Misael Santiago-Rodríguez, Irving Antonio Casiano-Mangual, Bernie Rafael Casiano-Santiago, Michael Antonio Casiano-Mangual, and Sharon Casiano-Mangual, bring this action in diversity against Defendants, Benjamín Valentín-Ruiz, his spouse, and their conjugal partnership; H.L. Suárez Transport; Universal Insurance Company; and other unknown defendants. (Docket No. 43.) Plaintiffs allege negligence under 31 L.P.R.A. § 5141 (1990) stemming from an automobile collision in Ponce, Puerto Rico, on November 13, 2006. (Id.) Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging that Santiago-Rodríguez is a citizen of Puerto Rico and that we, therefore, lack diversity jurisdiction. (Docket No. 57.) Plaintiffs oppose. (Docket No. 62.)

# I.

## **Factual and Procedural Synopsis**

We derive the following factual summary from Plaintiffs' amended complaint, the evidentiary hearing held on September 2, 2009, Santiago-Rodríguez' deposition and unsworn declaration under penalty of perjury, and additional documentary evidence submitted by Plaintiffs. (Docket Nos. 41; 66; 63; 64.)

Santiago-Rodríguez moved from Puerto Rico to Philadelphia, Pennsylvania in 1972. He held various jobs there through 2006, working most recently as a home remodeler. Santiago-Rodríguez married and raised two children in Philadelphia; his wife and both children currently reside there. He filed Federal and Pennsylvania income taxes claiming Pennsylvania as his state of residence, filing his last return in 1993. Between eighteen and twenty years ago, he bought a home in the Pastillo ward of Juana Díaz, Puerto Rico. Santiago-Rodríguez used the Juana Díaz home on occasional visits to see relatives, averaging once or twice a year. He held a Puerto Rico driver's license and kept a car at his Juana Díaz property.

On November 13, 2006, Santiago-Rodríguez was in the midst of one of his visits to Juana Díaz when he agreed to drive a friend, Ramón Casiano-Mateo, to a medical appointment. Santiago-Rodríguez was driving on Road No. One in Ponce, Puerto Rico, when a truck driven by Defendant Valentín-Ruiz crashed into him. Santiago-Rodríguez spent nine days in the hospital, receiving treatment for multiple traumas

to the neck, chest, abdomen, and legs. He was discharged in a wheelchair, which he used for a month, and proceeded from use of the wheelchair to a walker, crutches, and eventually a cane. This rehabilitation process lasted several months. Santiago-Rodríguez has not been able to work since the accident and has been supported entirely by his children. He was uninsured at the time of the accident, and his medical treatments in Puerto Rico were paid by the Automobile Accident Compensation Administration (AACA).

Santiago-Rodríguez first returned to Philadelphia in either January or February 2007. He stayed in Pennsylvania for about six weeks before traveling again to Puerto Rico for both legal and medical reasons. Puerto Rico had brought criminal charges against Valentín-Ruiz for his role in the car accident and had subpoenaed Santiago-Rodríguez as a witness at trial. Santiago-Rodríguez was required to meet with the prosecutor's office at various points and to appear in court once every two months over a one-year period. In addition, he needed to travel to Puerto Rico for further medical appointments and treatments that would be covered by AACA.[1] Santiago-Rodríguez states that he could not afford to travel between Pennsylvania and Puerto Rico for these appointments. Instead, he chose to stay in Puerto Rico. He remained there for about six months before returning to Philadelphia in the fall of 2007.

---

[1] The AACA does not cover the costs of medical care received outside of Puerto Rico. See 9 L.P.R.A. § 2055(5) (2006).

Civil No. 07-1988 (JAF)                                                    -4-

On October 16, 2007, Santiago-Rodríguez registered to vote in Philadelphia. At that time, he also had at least one current Philadelphia utility bill in his name.[2] The complaint in this case was filed on October 17, 2007. (Docket No. 1.)

In the two years since the Plaintiffs filed this complaint, Santiago-Rodríguez has spent the majority of his time in Puerto Rico. He registered to vote in Puerto Rico, voting in the 2008 elections. He has neither Puerto Rico nor Pennsylvania bank accounts. No evidence was submitted as to memberships in churches, clubs, or social organizations.

Defendants moved to dismiss for lack of jurisdiction on June 24, 2009, arguing that Santiago-Rodríguez was a citizen of Puerto Rico and that Plaintiffs failed to meet the diversity requirements of 28 U.S.C. § 1332. (Docket No. 57.) Plaintiffs responded on August 17, 2009. (Docket No. 62.) An evidentiary hearing was held on September 2, 2009. (Docket NO. 66.) We reserved judgment on Defendants' motion to dismiss, pending the outcome of settlement negotiations. (Docket No. 68.) Because settlement negotiations seem to have stalled, we proceed to dispose of Defendants' motion.

---

[2] Plaintiffs submitted both an electric and a water bill into evidence. (Docket Nos. 63; 63-1.) The water bill (Docket No. 63-1), however, was merely a notice that service had been shut off at some point in the past and that a balance was still due.

**II.**

**Dismissal Under Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may argue lack of subject-matter jurisdiction and move for dismissal by controverting the jurisdictional facts alleged by the plaintiff. See Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162-63 (1st Cir. 2007). To resolve such a motion, the court must first determine whether the factual allegations challenged are distinct from the case's merits. Valentín v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). If the challenges to jurisdiction are entwined with the merits of the case, then the court should employ the summary judgment standard to resolve the jurisdictional dispute. Torres-Negrón, 504 F.3d at 163. If, however, the facts relevant to jurisdiction are not entwined with the case's merits, the court enjoys broader fact-finding powers than in standard motions to dismiss. See Valentín, 254 F.3d at 363 ("In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.") Consequently, the jurisdictional facts that a plaintiff has pleaded will not be given the same presumption of truth as those facts going to the merits of its claim. Id. The party asserting jurisdiction bears the burden of proving its existence by a preponderance of the evidence. See Bank One, Tex., N.A. v. Montle, 964 F.2d 48 (1st Cir. 1992).

### III.

### **Analysis**

Defendants argue that Santiago-Rodríguez was domiciled in Puerto Rico at the filing of the complaint and, consequently, that we lack jurisdiction. (Docket No. 57.) Federal courts have jurisdiction over claims brought under 28 U.S.C. § 1332 only where the controversy arises between citizens of different states. Parties are citizens of the state where they are domiciled. See Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991). Domicile, in turn, "is the place where [a party] has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (citation and internal quotation marks omitted). Thus, a change of domicile requires physical presence in a state and the intent to remain there indefinitely. Valentín, 254 F.3d at 366.

Parties enjoy a rebuttable presumption of continuing domicile. Bank One, 964 F.2d at 50. Once a party challenging domicile has met its burden of producing evidence to rebut continuing domicile, the nonmovant must then prove its domicile by a preponderance of the evidence. Id. A party's domicile is determined at the time a case is filed; later changes in domicile will not defeat diversity. Id. Events subsequent to the filing of a suit may, however, be taken into account to the extent that they demonstrate the sincerity of a

Civil No. 07-1988 (JAF)                                              -7-

party's intention to remain.  García Pérez v. Santaella, 364 F.3d 348, 351 (1st Cir. 2004).

To determine a party's intent to remain in a state, courts evaluate a variety of factors linking the party to the state, including current residence; employment; voting registration;[3] taxes paid; real and personal property; bank accounts; and membership in unions, clubs, or churches.  García Pérez, 364 F.3d at 351.  None of these factors are dispositive.  Id.  The court's analysis must go beyond merely tallying a party's contacts with a state; it must also take into consideration the substantive nature of these contacts.  Id.

An evidentiary hearing may be necessary to determine a party's intent where he has expressly declared his intent and the opposition's written submissions have not shown, within a reasonable certainty, that declaration was false.  Bank One, 964 F.2d at 52.  In such cases, where the question is one of the declarant's credibility, "the court cannot rest its decision simply on the paper record, but must hold a hearing in order to adequately assess credibility."  Id. (quoting Prakash v. Am. Univ., 727 F.2d 1174, 1180 (D.C. Cir. 1984)); accord Padilla-Manqual, 516 F.3d at 34.

---

[3] While some jurisdictions afford a presumption of domicile to the state where a party is registered to vote, the First Circuit considers voter registration to be only a "weighty factor" in the analysis.  Bank One, 964 F.2d at 50.

Civil No. 07-1988 (JAF)                                                            -8-

In the present case, the Defendants have challenged Santiago-Rodríguez' presumption of continuing Pennsylvania domicile. Defendants argue that Santiago-Rodríguez' presence in Puerto Rico for most of the year preceding this case's filing, his Puerto Rico driver's license, and his voting in Puerto Rico's 2008 elections are all evidence of his intent to remain indefinitely in Puerto Rico. (Docket No. 57.) Santiago-Rodríguez must respond by proving his domicile by a preponderance of the evidence. Santiago-Rodríguez relies primarily on his unsworn declaration under penalty of perjury (Docket No. 64-2); his deposition testimony (Docket Nos. 64-3; 64-4); his Pennsylvania voter registration (Docket No. 63-3); and his Philadelphia utility bills (Docket Nos. 63; 63-2). After reviewing each party's submissions, we could not conclude that Defendants had proven Santiago-Rodríguez' declaration of intent to be false. Therefore, in accordance with <u>Bank One</u>, we ordered an evidentiary hearing to gauge Santiago-Rodríguez' credibility. (Docket No. 66.)

Having considered all the foregoing, and having assessed the declarant's credibility, we find that Santiago-Rodríguez did not intend, at the time of filing, to make Puerto Rico his permanent home. Santiago-Rodríguez spent most of 2007 in Puerto Rico, but his presence in Puerto Rico to testify in a criminal prosecution and receive medical treatment does not, by itself, prove an intent to remain there indefinitely. Rather, these were legal obligations and medical necessities that hampered Santiago-Rodríguez' return home to

Civil No. 07-1988 (JAF)                                                          -9-

Pennsylvania. At the time the suit was filed, he resided at his home in Pennsylvania with his family, paid Pennsylvania utility bills in his name, and had registered to vote there. Santiago-Rodríguez' continued presence in Puerto Rico subsequent to the complaint's filing may, indeed, have changed his domicile. But any doubts that a subsequent change in domicile might cast on his intent, in October 2007, to return to Pennsylvania are outweighed by the substantive nature of his ties to Philadelphia. Thus, we find that, at the time of the complaint's filing, Santiago-Rodríguez remained a citizen of Pennsylvania.

Accordingly, we hereby **DENY** Defendants' motion to dismiss. **Trial shall be held on November 30, 2009, at 9:00 A.M.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 10th day of November, 2009.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
Chief U.S. District Judge